MATTHEW J. HAFEY (*Pro Hac Vice Pending*)
mhafey@nicolaidesllp.com
TIMOTHY P. KITT (Nevada SBN: 11828)
tkitt@nicolaidesllp.com
ANDREW D. TELLES WYATT (*Pro Hac Vice Pending*)
awyatt@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
777 South Figueroa Street, Suite 750
Los Angeles, CA 90017
Telephone:   (213) 402-1245
Facsimile:    (213) 402-1246

Kevin E. Helm (Nevada SBN: 3432)
khelm@lee-lawfirm.com
LEE, LANDRUM & INGLE
7575 Vegas Drive, Suite 150
Las Vegas, Nevada 89128
Telephone:   (702) 880-9750
Facsimile:    (702) 880-9750

Attorneys for Plaintiff
KINSALE INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KINSALE INSURANCE COMPANY, an Arkansas corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>SVS SECURITY LLC, a Nevada limited liability company,<br><br>                    Defendant. | Case No.<br><br>**KINSALE INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF DEFENSE FEES AND COSTS** |

## COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF DEFENSE FEES AND COSTS

Plaintiff Kinsale Insurance Company ("Kinsale") for its Complaint against the above-named Defendants, upon knowledge, information, and belief, alleges as follows:

### NATURE OF THE ACTION

1.      This is an action by Kinsale pursuant to 28 U.S.C. sections 2201 and 2202 for a declaratory judgment regarding Kinsale's rights and obligations under Commercial General Liability Policy No. 0100144841-2, effective March 24, 2023 to March 24, 2024 (the "Primary Policy"), and Commercial Excess Liability Insurance Policy No. 0100144843-2, effective March 24, 2023 to March 24, 2024 (the "Excess Policy"), issued to defendant SVS Security LLC ("SVS") (sometimes collectively referred to as the "Policies").  A true and correct copy of the Primary Policy (redacted to eliminate disclosure of sensitive financial and rating information) is attached as Exhibit A and incorporated herein by this reference.  A true and correct copy of the Excess Policy (redacted to eliminate disclosure of sensitive financial and rating information) is attached as Exhibit B and incorporated herein by this reference.

2.      SVS was named as a defendant in an underlying action styled *Henry Willis Webb, Jr., et al. v. SVS Security LLC, et al.*, Clark County, Nevada District Court Case No. A-23-880332-C (the "*Webb* Action").  SVS tendered its defense of the *Webb* Action to Kinsale.  Within thirty days of that tender of defense, Kinsale agreed to provide SVS with a defense, subject to a full and complete reservation of rights.  True and correct copies of the original Complaint and the presently operative First Amended Complaint in the *Webb* Action are attached as Exhibits C and D and incorporated herein by this reference.

3.     In this action, Kinsale seeks a determination that no coverage is available to SVS under the Policies for any insureds related to the claims asserted in the *Webb* Action, as further identified below.

## THE PARTIES

4.     At all relevant times herein, Kinsale was a corporation organized under the laws of the State of Arkansas whose principal place of business is located in Richmond, Virginia.  Kinsale is an insurance company eligible to issue insurance policies in Nevada on a non-admitted basis as an Excess and Surplus Lines carrier.

5.     At all relevant times herein, defendant SVS was and is a limited liability company organized and existing under the laws of the State of Nevada whose principal place of business is located in Las Vegas, Nevada.  At all relevant times herein, the members of SVS were and are Mark W. Broadhurst and Mataava Suafali.

## JURISDICTION AND VENUE

6.     The Court has jurisdiction over this action pursuant to 28 U.S.C. section 1332(a)(1).  There is complete diversity of citizenship between Kinsale and Defendant SVS.  Kinsale is incorporated in Arkansas and maintains its principal place of business in Virginia, and is therefore a "citizen" of the states of Arkansas and Virginia.  SVS's members are domiciled in the State of Nevada, and therefore SVS is a "citizen" of Nevada.  Moreover, none of SVS's members maintain domiciles in the states of Arkansas or Virginia, so, as outlined below, complete diversity exists.

7.     One of the members of SVS, Mark W. Broadhurst, is an individual and permanent resident of Las Vegas, Nevada.  Mr. Broadhurst has owned a home in Las Vegas and has lived there with his family as his permanent residence since at least 2009.  He was the founder and

managing member of SVS since its formation in 2013, and regularly commutes to work at its offices in Las Vegas.  Mr. Broadhurst has been licensed by the Nevada Private Investigators Licensing Board since at least June, 2018.  Mr. Broadhurst has been registered to vote in Clark County, Nevada since at least November, 2020.  Mr. Broadhurst is active in the Las Vegas community and maintains ties in his community there.  Mr. Broadhurst was the person who signed the application for the Policies and submitted the same to Kinsale through SVS's insurance broker.  Mr. Broadhurst is therefore a citizen of the State of Nevada.

8.     The other member of SVS, Mataava Suafali, is an individual and permanent resident of Las Vegas, Nevada.  Mr. Suafali has owned a home in Las Vegas and has lived there with his family as his permanent residence since at least December, 2020.  Mr. Suafali has been a member of SVS since its formation in 2013, and regularly commutes to work at its offices in Las Vegas.  Mr. Suafali has been licensed by the Nevada Private Investigators Licensing Board since at least April, 2016.  Mr. Suafali has been registered to vote in Clark County, Nevada since at least September, 2022.  Mr. Suafali is active in the Las Vegas community and maintains ties in his community there.  Mr. Suafali is therefore a citizen of the State of Nevada.

9.     The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, in that the underlying *Webb* Action involves claims in which the plaintiffs seek special, general and punitive damages for alleged wrongful death and related negligence claims arising out of a shooting during a pool party at an apartment complex.  Additionally, Kinsale has already retained defense counsel to represent SVS in the *Webb* Action and has actually paid defense fees and costs as well as a substantial retainer fee to experts in defense of that action in an amount

that exceeds SVS's deductible.  Based on the allegations of the Complaint in the *Webb* Action, the nature of the claims stated therein involving wrongful death due to a shooting at an outdoor event and the information known to Kinsale at the time of tender, Kinsale reasonably anticipates that defense fees, costs, expert witness fees and other expenses through trial in the *Webb* Action will exceed $75,000.

10.    Venue is proper pursuant to 28 U.S.C. section 1391, in that a substantial part of events giving rise to this action occurred in this district and Defendants in this action reside in this district.

## FACTUAL ALLEGATIONS

### A.    THE PRIMARY POLICY

11.    Kinsale issued SVS the Primary Policy, with limits of insurance of $1,000,000 per "occurrence" and $2,000,000 in the aggregate.

12.    The Primary Policy includes Commercial General Liability Coverage Form CG0001-0413, which states in pertinent part as follows:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**
   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of

judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** –

Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

\* \* \*

## SECTION V – DEFINITIONS

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13.    The Primary Policy's Insuring Agreement is modified by form ADF2000-0622, titled Policy Amendment – Extrinsic Evidence, as follows:

### POLICY AMENDMENT – EXTRINSIC EVIDENCE

**This endorsement modifies insurance under the following: ALL COVERAGE FORMS**

Notwithstanding any provision of this Policy to the contrary, all Insuring Agreements in all Coverage Forms, Coverage Sections, Coverage Parts, or endorsements included in this Policy are amended by adding the following:

Our right and duty to defend or indemnify the insured against any claim or suit will be determined by review of the facts and allegations pleaded and the terms of this Policy, and we may look to and consider extrinsic evidence outside of the allegations, facts pleaded, or any combination thereof by any claimant to determine whether we owe a duty to defend or indemnify against any such claim or suit.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

14.     The Primary Policy contains endorsement form CAS3002-1016, titled Exclusion – Assault and Battery, which modifies the insurance provided under the Primary Policy's Commercial General Liability Coverage as follows:

**EXCLUSION - ASSAULT AND BATTERY**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE**

The following exclusion is added to this policy:

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising out of, related to, or, in any way involving any actual or alleged assault, battery, harmful or offensive contact, or threat, whether provoked or unprovoked.

This exclusion includes but is not limited to:

1. The prevention or suppression, or the failure to suppress or prevent any assault, battery, harmful or offensive contact, or threat;
2. The failure to provide an environment safe from any assault, battery, harmful or offensive contact, or threat, or the failure to warn of the dangers of the environment that could contribute to any assault, battery, harmful or offensive contact, or threat;

3. The selling, servicing or furnishing of alcoholic beverages resulting in any assault, battery, harmful or offensive contact, or threat;
4. Injury or damage committed while using reasonable force to protect persons or property or acting in self-defense;
5. The reporting or failing to report to the proper authorities;
6. Conducting or failing to conduct an investigation of any assault, battery, harmful or offensive contact, or threat;
7. Providing or failing to provide first aid or medical treatment, or otherwise handling or responding after there has been an assault, battery, harmful or offensive contact, or threat;
8. Any assault, battery, harmful or offensive contact, or threat whether caused by, or at the instigation, instruction, direction or due to the negligence of the insured, the insured's employees, agents, patrons, customers or any other person arising from any causes whatsoever; or
9. The negligent hiring, employment, training, supervision, or retention of any employee or agent of any insured with respect to items 1. through 8. above.

This exclusion applies regardless of fault or intent and regardless of the particular cause of action.

This exclusion applies to any claim or "suit" regardless of whether assault, battery, harmful or offensive contact, or threat is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged "bodily injury", "property damage" or "personal and advertising injury" arises out of a chain of events that includes any assault, battery, harmful or offensive conduct.

For purposes of this endorsement, **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, item **a. Expected or Intended Injury** is deleted and replaced with the following:

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**.

15.    The Primary Policy includes additional exclusions pursuant to endorsement form CAS3043-0621, which, in part, includes an exclusion related to Kinsale's defense obligations as follows:

**ADDITIONAL POLICY EXCLUSIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE
LIQUOR LIABILITY COVERAGE

The following exclusions are added to this Policy:

**DUTY TO DEFEND EXCLUSION**
Where there is no coverage under this Policy, there is no duty to defend.

16.    The Primary Policy Contains additional terms, conditions, exclusions and endorsements which may preclude coverage for the *Webb* Action.  Kinsale reserves the right to amend this Complaint to add such allegations, according to proof.

**B.    THE EXCESS POLICY**

17.    Kinsale issued SVS the Excess Policy, with limits of insurance of $2,000,000 per "occurrence" and $2,000,000 in the aggregate, excess of the Primary Policy limit, which must be exhausted by the payment of a judgment or settlement before the Excess Policy is even potentially triggered.

18.    The Excess Policy contains Commercial Excess Liability Policy Form CAX0001-0817, which states in pertinent part as follows:

**SECTION I- COVERAGE**
**A. INSURING AGREEMENT**

We will pay on behalf of the Named Insured those sums in excess of the "underlying insurance" that you become legally obligated to pay as damages because of injury or property damage to which this insurance applies, provided that the damages would be covered by the "underlying insurance(s)", but for the exhaustion of the applicable Limits of Insurance.

This policy shall follow the terms, definitions, conditions and exclusions of the "primary insurance" and of any other "underlying insurance" only to the extent coverage is further limited or restricted by the terms and conditions of such other "underlying insurance"; subject always to the policy period, policy limits, premiums and all other terms, definitions, conditions and exclusions of this policy. If any provisions of the "underlying insurance" conflict with any provisions of this policy, the provisions of this policy will apply.

This policy will not, in any event, provide broader coverage than that provided by the "underlying insurance". The amount we will pay for damages shall not exceed the Limits of Insurance stated in **Item 1** of the Declarations.

**B. DEFENSE, INVESTIGATION, SETTLEMENT**

1. When the Limit of Insurance of "underlying insurance" have not been exhausted, the Company will have the right but not the duty to participate in the investigation, defense and settlement of claims or suits against you seeking damages because of injury or damage to which this insurance might apply. If a claim or suit is

settled within the limits of insurance of the "underlying insurance(s)", no costs will be payable by the Company.

2. When the Limit of Insurance of "underlying insurance" are exhausted by payments of judgments, settlements, and any costs or expenses subject to such limit, we will have a duty to defend claims or suits to which this insurance applies. We may, at our discretion, investigate and settle any claims or suits however we will have no duty to defend an insured against any claim or suit seeking damages to which this insurance does not apply. No other duty, obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for elsewhere in this policy.

3. Subject to the above provisions, costs incurred by you without the written consent of the Company shall be paid by you.

4. When we assume the defense of any claim or suit against you that seeks damages covered by this policy, we will pay all costs to the extent that such payments are not covered elsewhere.

5. If the "primary insurance" includes defense costs and expenses within the limits of insurance of those policy(ies), then any such payments we make are included within and will reduce the Limits of Insurance of this policy as shown in **Item 1** of the Declarations.

6. We will have no duty to investigate, defend or settle claims or suits brought against you once the Limits of Insurance of this policy as stated in **Item 1** of the Declarations are exhausted, or if claims or suits brought against you are excluded from coverage under this policy.

/ / /

/ / /

/ / /

**SECTION II- DEFINITIONS**

1. "Primary insurance" means the "underlying insurance" policy(ies) listed as "primary insurance" in the Schedule of Underlying Insurance forming a part of this policy.

2. "Underlying insurance(s)" - means:

   All policies or self insurance, including the "primary insurance", listed in the Schedule of Underlying Insurance and any replacements or renewals of them, provided that such replacement or renewal policy(ies) provide coverage equivalent to and afford limits of insurance equal to or greater than the policy(ies) being renewed or replaced. Policies purchased or issued for newly acquired or newly formed organizations shall not be more restrictive than any of the policies included in the Schedule of Underlying Insurance.

   If any "underlying insurance" is subject to a sublimit, this insurance shall not drop down as excess of such sublimit, however, the limit of insurance of the "underlying insurance" shall be recognized as depleted to the extent of the underlying insurer's payment of loss subject to such sublimit.

**SECTION III- EXCLUSIONS**

All exclusions in the "underlying insurance", will also apply to the Limits of Insurance and coverages available under this policy. If there are conflicts in the exclusions of the "underlying insurance" with any of the exclusions of this policy, the exclusions in this policy will apply.

* * *

6. **Duty To Defend**
   Where there is no coverage under this policy, there is no duty to defend.

19.   The Excess Policy contains endorsement form CAX3024-1016, titled Exclusion – Assault and Battery, which modifies the insurance provided under the Commercial Excess Liability Coverage as follows:

## EXCLUSION - ASSAULT AND BATTERY

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY COVERAGE**

The following exclusion is added to this policy:

This insurance does not apply to any claim or suit for injury or damage arising out of, related to or in any way involving any actual or alleged assault, battery, harmful or offensive contact, or threat, whether provoked or unprovoked.

This exclusion includes but is not limited to:

1. The prevention or suppression, or the failure to suppress or prevent any assault, battery, harmful or offensive contact, or threat;
2. The failure to provide an environment safe from any assault, battery, harmful or offensive contact, or threat, or the failure to warn of the dangers of the environment that could contribute to any assault, battery, harmful or offensive contact, or threat;
3. The selling, servicing or furnishing of alcoholic beverages resulting in any assault, battery, harmful or offensive contact, or threat;
4. Injury or damage committed while using reasonable force to protect persons or property or acting in self-defense;
5. The reporting or failing to report to the proper authorities;
6. Conducting or failing to conduct an investigation of any assault, battery, harmful or offensive contact, or threat;
7. Providing or failing to provide first aid or medical treatment, or otherwise handling or responding after there has been an assault, battery, harmful or offensive contact, or threat;
8. Any assault, battery, harmful or offensive contact, or threat, whether caused by, or at the instigation, instruction, direction or due to the negligence of the insured, the insured's employees, agents, patrons, customers or any other person arising from any causes whatsoever; or

9. The negligent hiring, employment, training, supervision, or retention of any employee or agent of any insured with respect to items 1. through 8. above.

This exclusion applies regardless of fault or intent and regardless of the particular cause of action.

This exclusion applies to any claim or suit regardless of whether assault, battery, harmful or offensive contact, or threat is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged injury or damage arises out of a chain of events that includes any assault, battery, harmful or offensive conduct.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

### C.   The Underlying *Webb* Action

20.   On or about November 8, 2023, Henry Willis Webb, Jr. and Meisha Larita Webb (individually and as Special Administrator of the Estate of Breeana Larita Webb (deceased)) filed the *Webb* Action seeking to recover damages from SVS following Breeana Webb's death.

21.   The Complaint in the *Webb* Action alleges, among other things, that on August 6, 2023, decedent Breeana Webb attended a "large, loud, rambunctious" party involving "heavy drug and alcohol consumption" at an apartment complex located at 7017 S. Buffalo Drive, Las Vegas, Nevada (the "Apartment Complex").

22.   The Complaint in the *Webb* Action further alleges that "an altercation erupted between invitees at the Pool Party, resulting in a shootout" and "while Breeana was fleeing the scene, she was caught in the crossfire and shot multiple times, including in the face."  Breeana Webb passed away due to her injuries.

23.     The Complaint in the *Webb* Action makes the following allegations as to SVS, among other things:

   a.  SVS was "jointly responsible for monitoring and providing security for the Apartment Complex premises, including, without limitation, the pool area."

   b.  SVS was aware that the party was scheduled for August 6, 2023, and that the pool area was a "more likely setting . . . for young, boisterous invitees to gather for parties involving drinking, drug use, disorderly conduct, physical altercations, and verbal altercations."

   c.  SVS "patrolled the pool area before, during and after the Pool Party on August 6, 2023 and were aware of the Pool Party."

   d.  SVS personnel "failed to provide adequate security, failed to take action to control the crowd, and failed to take action to stop the Pool Party."

   e.  SVS "failed to conceive, promulgate, implement or enforce appropriate security policies and procedures to ensure the safety of invitees," which resulted in the attack on and death of Breeana Webb.

24.     The Complaint in the *Webb* Action asserts causes of action for (1) Negligence; (2) Wrongful Death; and (3) Negligent Hiring, Retention and Supervision against SVS.

25.     On November 28, 2023, Kinsale received notice of SVS' tender of defense for the *Webb* Action.  Kinsale agreed to undertake the defense of SVS pursuant to the terms and conditions of the Policies and subject to a full reservation of rights thereunder, which includes the right to seek reimbursement of any amount paid by Kinsale to defend SVS in the event that Kinsale proves that there never was a duty to defend SVS with regard to the *Webb* Action, to settle the *Webb* Action and seek reimbursement of those amounts of the settlement not covered under the Policies, to seek

declaratory relief to determine Kinsale's rights and obligations under the Policies, and to withdraw from the defense once it is determined that the Policies do not provide coverage for the *Webb* Action for SVS.

## FIRST CLAIM FOR RELIEF

### Declaratory Relief – Duty to Defend (Application of Assault and Battery Exclusion)

26. Kinsale repeats and incorporates by reference the allegations in Paragraphs 1 through 25 of this Complaint.

27. A true and present controversy exists between Kinsale, on the one hand, and Defendant on the other, in that Kinsale contends that it has no and never had a duty to defend SVS against the *Webb* Action due to the application of the terms, conditions, exclusions, and endorsements of the Policies. In particular, there is no and never was a potential for coverage for the *Webb* Action under the Policies because the claims in the *Webb* Action are excluded from coverage pursuant to the Assault and Battery Exclusion. Kinsale is informed and believes that Defendant contends otherwise.

28. Under Nevada law, assault includes "[u]nlawfully attempting to use physical force against another person" and "[i]ntentionally placing another person in reasonable apprehension of immediate bodily harm." Nev. Rev. Stat. § 200.471. Battery includes "any willful and unlawful use of force or violence upon the person of another." *Id.* § 200.481.

29. The facts, circumstances, and claims in the *Webb* Action, which arise from a shooting and damages resulting from the shooting, arise out of, are related to, and involve actual or alleged assault, battery, harmful or offensive contact, or threat, whether provoked or unprovoked, and coverage for the *Webb* Action is therefore precluded under Assault and Battery Exclusion in the Policies.

30.     A judicial determination is necessary to determine the respective rights of the parties hereto pursuant to the terms, conditions, exclusions, and endorsements of the Policies.

31.     Upon such determination, Kinsale is entitled to withdraw from the defense of the *Webb* Action and a declaration of no coverage for any insured related to the claims asserted in the *Webb* Action under the Policies.

## SECOND CLAIM FOR RELIEF

### Declaratory Relief – Duty to Defend (Other Terms, Conditions, Exclusions and Endorsements)

32.     Kinsale repeats and incorporates by reference the allegations in Paragraphs 1 through 31 of this Complaint.

33.     A true and present controversy exists between Kinsale, on the one hand, and Defendants on the other, in that Kinsale contends that it has no and never had a duty to defend SVS against the *Webb* Action due to the application of other terms, conditions, exclusions, and endorsements of the Policies as may be proven at trial.  Kinsale is informed and believes that Defendant contends otherwise.

34.     A judicial determination is necessary to determine the respective rights of the parties hereto pursuant to the terms, conditions, exclusions, and endorsements of the Policies.

35.     Upon such determination, Kinsale is entitled to withdraw from the defense of the *Webb* Action and a declaration of no coverage for any insured related to the claims asserted in the *Webb* Action under the Policies.

/ / /

/ / /

/ / /

## THIRD CLAIM FOR RELIEF

### Declaratory Relief – Duty to Indemnify

36.    Kinsale incorporates Paragraphs 1 through 35, above, as though fully set forth herein.

37.    A true and present controversy exists between Kinsale, on the one hand, and Defendant on the other, in that Kinsale contends that it has no and never had a duty to defend SVS against the *Webb* Action due to the application of the terms, conditions, exclusions, and endorsements of the Policies, as set forth above, and upon such additional terms, conditions, exclusions, and endorsements as may be proven at trial.  Upon a determination by the Court that Kinsale has no and never had a duty to defend, the Court may also determine that Kinsale has no duty to indemnify any insured with respect to the *Webb* Action, without reference or determination of any facts relating to the underlying *Webb* Action. Kinsale is informed and believes that Defendants contend otherwise.

38.    A judicial determination is necessary to determine the respective rights of the parties hereto pursuant to the terms, conditions, exclusions, and endorsements of the Policies.

39.    Kinsale therefore seeks a judicial determination that Kinsale does not have an obligation to indemnify any insured in connection with the *Webb* Action under the Kinsale Policy.

### FOURTH CLAIM FOR RELIEF

### Declaratory Relief – Reimbursement

40.    Kinsale repeats and incorporates by reference the allegations in Paragraphs 1 through 39 of this Complaint, as though fully set forth herein.

41.    A true and present controversy exists between Kinsale, on the one hand, and Defendants on the other, in that Kinsale contends that upon

the Court's determination of the issue of whether Kinsale ever had a duty to defend the *Webb* Action, Kinsale also has a right to reimbursement of the attorney's fees and costs it expended in defense of the *Webb* Action for all payments of such defense fees and costs made by Kinsale.  As of the date of this Complaint, Kinsale has already incurred substantial attorney's fees and costs plus expert costs defending the *Webb* Action. Kinsale is informed and believes that Defendants contend otherwise.

42.    A judicial determination is necessary to determine the respective rights of the parties hereto pursuant to the terms, conditions, exclusions, and endorsements of the Policies.

43.    Upon such determination, Kinsale contends that it is entitled to recover from SVS those attorney's fees and costs it expended in defense of the *Webb* Action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kinsale requests that the Court enter judgment in its favor:

1.    On the First Claim for Relief, for a declaration that Kinsale had and has no obligation to pay for any defense fees and costs on behalf of any insured under the Policies in connection with the *Webb* Action, because of the absence of any potential coverage under the terms, conditions, exclusions, and endorsements of the Policies for the claims asserted in the *Webb* Action.

2.    On the Second Claim for Relief, for a declaration that Kinsale had and has no obligation to pay indemnity on behalf of any insured under the Policies in connection with the *Webb* Action, because of the absence of any potential coverage under the terms of the Policies for the claims asserted in the *Webb* Action.

/ / /

3.     On the Third Claim for Relief, for recovery of damages for reimbursement and recoupment of all amounts paid by Kinsale in connection with the *Webb* Action in an amount proven at trial, and for prejudgment interest thereon at the legal rate.

4.     For costs of suit.

5.     For such further relief as the Court may deem proper.

Dated:  May 28, 2024                    NICOLAIDES FINK THORPE
                                        MICHAELIDES SULLIVAN LLP


                                        By:____*/s/ Timothy P. Kitt*_____
                                            Matthew J. Hafey
                                            Timothy P. Kitt
                                            Andrew D. Telles Wyatt
                                        **Attorneys for Plaintiff KINSALE
                                        INSURANCE COMPANY**




Dated:  May 28, 2024                    LEE, LANDRUM & INGLE




                                        By:_____*/s/* Kevin E. Helm_____
                                            Kevin E. Helm
                                        **Attorney for Plaintiff KINSALE
                                        INSURANCE COMPANY**