MATTHEW J. HAFEY *(admitted Pro Hac Vice)*
mhafey@nicolaidesllp.com
TIMOTHY P. KITT (SBN: 11828)
tkitt@nicolaidesllp.com
KHRYS WU (*admitted Pro Hac Vice*)
kwu@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
777 South Figueroa Street, Suite 750
Los Angeles, CA 90017
Telephone:    (213) 402-1245
Facsimile:    (213) 402-1246

Jared G. Christensen (Nevada SBN: 11538)
jchristensen@bremerwhyte.com
BREMER, WHYTE, BROWN & O'MEARA, LLP
1160 N. Town Center Drive, Suite 250
Las Vegas, Nevada 89144
Telephone:    (702) 258-6665
Facsimile:    (702) 258-6662
*Designated solely for personal service pursuant to Nev. SCR 42.1*

Attorneys for Plaintiff
KINSALE INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KINSALE INSURANCE COMPANY, an Arkansas corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>SVS SECURITY LLC, a Nevada limited liability company; HENRY WILLIS WEBB, JR., an individual; MEISHA LARITA WEBB, an individual and Special Administrator of the Estate of Breeana Larita Webb (Deceased),<br><br>                    Defendants. | Case No. 2:24-cv-00997-RFB-DJA<br><br>**KINSALE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br><u>**ORAL ARGUMENT / HEARING REQUESTED**</u><br><br><u>**Accompanying Documents:**</u><br>Request for Judicial Notice<br><br>Courtroom: 7C<br>Judge:     Richard F. Boulware, II<br><br>Complaint filed:    May 28, 2024<br>Trial Date:         Not set |

**TO THE HONORABLE COURT, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that Plaintiff Kinsale Insurance Company ("Kinsale") will and hereby does move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Specifically, Kinsale seeks declaratory judgment from this Court that: (1) Kinsale does not owe SVS Security LLC ("SVS") a duty to defend with respect to the underlying lawsuit styled, *Henry Willis Webb, Jr., et al. v. SVS Security LLC, et al.,* Clark County, Nevada District Court Case No. A-23-880332-C (the "Webb Action") due to application of the Assault and Battery Exclusion contained in the policies at issue; (2) Kinsale does not owe SVS a duty to indemnify with respect to the Webb Action due to application of the Assault and Battery Exclusion contained in the policies at issue; (3) if Henry W. Webb, Jr. and/or Meisha Larita Webb obtain a settlement or judgment in the Webb Action against SVS, this Court's judicial determination is binding on Henry W. Webb, Jr. and/or Meisha Larita Webb such that they shall have no right to seek recovery against Kinsale on that settlement or judgment as a judgment creditor, in a garnishment proceeding, or as a putative third party beneficiary of the Kinsale Policies; and (4) Kinsale has a right to reimbursement of the attorney's fees and costs it expended in defense of the Webb Action for all payments of such defense fees and costs made by Kinsale.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Request for Judicial Notice filed concurrently herewith, as well as all pleadings and papers on file in this matter and upon such other evidence as may be presented to the Court at the time of hearing of this Motion.

Dated: January 24, 2025

NICOLAIDES FINK THORPE MICHAELIDES SULLIVAN LLP

By: _____

    Matthew J. Hafey (*admitted PHV*)
    Timothy P. Kitt
    Khrys Wu (*admitted PHV*)
Attorneys for Plaintiff KINSALE INSURANCE COMPANY

# TABLE OF CONTENTS

I.      INTRODUCTION. ................................................................................... 1

II.     STATEMENT OF FACTS. ...................................................................... 2

        A.      The Kinsale Policies ................................................................. 2

        B.      The Underlying Webb Action. ................................................... 7

        C.      Kinsale Defends SVS Against the Webb Action Under a Complete
                Reservation of Rights ................................................................ 8

III.    ARGUMENT. .......................................................................................... 9

        A.      A Motion for Judgment on the Pleadings Should be Granted Where
                Premised on Undisputed Facts. ................................................ 9

        B.      Interpretation of an Insurance Policy and the Duty to Defend. ................. 9

        C.      The Assault and Battery Exclusion Bars Coverage for the Underling
                Webb Action. ........................................................................... 10

        D.      Because Kinsale Never Had a Duty To Defend, it is Entitled to
                Reimbursement of Costs and Fees. ......................................... 15

IV.     CONCLUSION ...................................................................................... 16

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Aetna Cas. & Sur. Co. v. Centennial Ins. Co.,*
   838 F.2d 346 (9th Cir. 1988) ................................................................. 10

*Alps Prop. Cas. Ins. Co. v. Gewerter*,
   2018 WL 6003855 (D. Nev. Nov. 15, 2018) ......................................... 9

*Anniversary Mining Claims, LLC v. Five Star Trust dtd 5/27/2015*,
   2021 WL 3742017 (D. Nev. Aug. 24, 2021) ......................................... 9

*Beazley Underwriting LTD v. Jumper Man Party Rentals, LLC,*
   2024 WL 1995345 (D. Nev. May 3, 2024) ........................................... 15

*Burlington Ins. Co. v. Salmoran,*
   181 F.Supp.3d 810 (D. Nev. Sept. 28, 2015) ....................................... 11

*Burlington Insurance Company v. De La Puente,*
   719 Fed.Appx. 615 (9th Cir. 2018) ........................................... 11, 12, 13

*Chavez v. United States,*
   683 F.3d 1102 (9th Cir. 2012) .............................................................. 9

*Capitol Indemnity Corp. v. Blazer,*
   51 F.Supp.2d 1080 (D.Nev.1999) ........................................................ 12

*Erie R.R. v. Tompkins*,
   304 U.S. 64 (1938) ................................................................................ 1

*First Financial Ins. Co. v. Scotch 80's Ltd., Inc.,*
   2009 WL 1886167 (D. Nev. June 29, 2009) ........................................ 12

*Fleming v. Pickard*,
   581 F.3d 922 (9th Cir. 2009) ............................................................... 9

*Fortis Benefits Ins. Co. v. Johnson*,
   966 F.Supp. 987 (D. Nev. 1997) ......................................................... 1

*Hickman v. Mead*,
   2019 WL 4139434 (D. Nev. Aug. 30, 2019) ........................................ 9

*Robinson v. First Financial Insurance Company,*
   2009 WL 10693921 (D. Nev. Oct. 6, 2009) ......................................... 12

*Swartz v. KPMG LLP,*
   476 F.3d 756 (9th Cir. 2007) ............................................................... 9

*Town Square Las Vegas, LLC v. Hudson Specialty Ins. Co.*,
  2022 WL 943366 (D. Nev. March 28, 2022) ........................................................ 12

*United Specialty Insurance Company v. Hachiman, LLC*,
  2018 WL 2245057 (D. Nev. Feb. 15, 2018) .................................................... 13, 14

## STATE CASES

*Am. Excess Ins. Co. v. MGM*,
  729 P.2d 1352 (1986) ............................................................................................ 9

*Benchmark Ins. Co. v. Sparks*,
  254 P.3d 617 (2011) ............................................................................................ 10

*Century Sur. Co. v. Andrew*,
  432 P.3d 180 (2018) ............................................................................................ 10

*Farmers Ins. Group v. Stonik*,
  867 P.2d 389 (1994) .............................................................................................. 9

*Fourth St. Place v. Travelers Indem. Co.*,
  270 P.3d 1235 (2011) ............................................................................................ 9

*Hernandez v. First Financial Insurance Company*,
  802 P.2d 1278 (1990) ................................................................. 1, 10, 11, 13

*McCall v. Carlson*,
  172 P.2d 171 (1946) ............................................................................................ 15

*Nautilus Insurance Company v. Access Medical, LLC*,
  482 P.3d 683 (2021) ...................................................................................... 10, 15

*Powell v. Liberty Mut. Fire Ins. Co.*,
  252 P.3d 668 (2011) .............................................................................................. 9

*United Nat'l Ins. Co. v. Frontier Ins. Co.*,
  99 P.3d 1153 (2004) ............................................................................................ 10

## STATE STATUTES

Nev. Rev. Stat. § 200.471 .............................................................................. 13, 15

Nev. Rev. Stat. § 200.481 .............................................................................. 13, 15

## RULES

Fed. R. Civ. P. Rule 12(b)(6) ............................................................................... 9

Fed. R. Civ. P. Rule 12(c) .................................................................................... 9

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION.**

This is an insurance coverage dispute in which the policy terms and the allegations in the underlying lawsuit are not in dispute. The gravamen of the underlying Webb plaintiffs' complaint is the fatal shooting of their daughter, Breeana Larita Webb, at a pool party on premises controlled by an apartment complex called The Wyatt. Defendant SVS Security LLC provided security services to the apartment complex and allegedly "failed to do anything to stop the Pool Party or control the crowd."   In the underlying lawsuit, plaintiffs allege that "shortly before 11:00 p.m., an altercation erupted between invitees at the Pool Party, resulting in a shootout." Ms. Webb was "caught in the crossfire and shot multiple times, including in the face" and died.

Kinsale Insurance Company ("Kinsale") issued primary and excess commercial general liability policies to SVS Security LLC ("SVS"), each of which contained an endorsed exclusion for claims arising out of Assault and Battery (the "A&B Exclusion"), which broadly exclude coverage for any claims, suit or "bodily injury" arising out of assault, battery, harmful or offensive contact, including derivative claims such as failing to prevent assault or battery, failure to provide a safe environment, furnishing alcoholic beverages which results in assault and battery, injury inflicted in self-defense, conducting or failing to conduct an investigation, providing or failure to provide medical treatment, assault or battery by persons other than "insureds," or negligent hiring and training. The Nevada Supreme Court upheld a similar (and less broad) assault and battery exclusion in *Hernandez v. First Financial Insurance Company*, 802 P.2d 1278 (1990), declaring such exclusions unambiguous and enforceable.[1] Moreover, in the 30 plus years since *Hernandez*, Nevada courts have consistently upheld similar assault and battery exclusions. Because the allegations against SVS in the underlying Webb lawsuit unmistakenly arise out of assault and battery, as a matter of law, Kinsale is entitled to

---

[1] A federal district court, sitting in diversity, must apply the substantive law of the forum state in which it resides. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *Fortis Benefits Ins. Co. v. Johnson*, 966 F.Supp. 987, 989 (D. Nev. 1997) .

judgment on the pleadings that it has no obligation to defend or indemnify SVS in connection with the underlying lawsuit.

## II.    STATEMENT OF FACTS.

### A.    The Kinsale Policies.

Kinsale issued Commercial General Liability Policy No. 0100144841-2, effective March 24, 2023 to March 24, 2024 (the "Primary Policy"), and Commercial Excess Liability Insurance Policy No. 0100144843-2, effective March 24, 2023 to March 24, 2024 (the "Excess Policy"), to defendant SVS Security LLC ("SVS") (sometimes collectively referred to as the "Policies", ECF 17-1 and 17-2, respectively; Request for Judicial Notice ("RJN"), ¶¶ 2, 3). (Kinsale's First Amended Complaint ("FAC"), ¶¶ 15-23 (ECF 17), SVS's Amended Answer, ¶¶ 2, 6, 7 (ECF 39).)

The Primary Policy includes Commercial General Liability Coverage Form CG0001-0413, which states in pertinent part as follows:

> **SECTION I – COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>     **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
>                     \* \* \*
>
> **SECTION V – DEFINITIONS**
> . . .
>     **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

(ECF 17-1, at pages 6, 18.)

The Primary Policy's Insuring Agreement is modified by form ADF2000-0622, titled Policy Amendment – Extrinsic Evidence, as follows:

**POLICY AMENDMENT – EXTRINSIC EVIDENCE**

**This endorsement modifies insurance under the following:**

**ALL COVERAGE FORMS**

Notwithstanding any provision of this Policy to the contrary, all Insuring Agreements in all Coverage Forms, Coverage Sections, Coverage Parts, or endorsements included in this Policy are amended by adding the following:

Our right and duty to defend or indemnify the insured against any claim or suit will be determined by review of the facts and allegations pleaded and the terms of this Policy, and we may look to and consider extrinsic evidence outside of the allegations, facts pleaded, or any combination thereof by any claimant to determine whether we owe a duty to defend or indemnify against any such claim or suit.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

(ECF 17-1, at page 22.)

The Primary Policy contains endorsement form CAS3002-1016, titled Exclusion – Assault and Battery, which modifies the insurance provided under the Primary Policy's Commercial General Liability Coverage as follows:

**EXCLUSION - ASSAULT AND BATTERY**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE**

The following exclusion is added to this policy:

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising out of, related to, or, in any way involving any actual or alleged assault, battery, harmful or offensive contact, or threat, whether provoked or unprovoked.

This exclusion includes but is not limited to:

1. The prevention or suppression, or the failure to suppress or prevent any assault, battery, harmful or offensive contact, or threat;

2. The failure to provide an environment safe from any assault, battery, harmful or offensive contact, or threat, or the failure to warn of the dangers of the environment that could contribute to any assault, battery, harmful or offensive contact, or threat;

3. The selling, servicing or furnishing of alcoholic beverages resulting in any assault, battery, harmful or offensive contact, or threat;

4. Injury or damage committed while using reasonable force to protect persons or property or acting in self-defense;

5. The reporting or failing to report to the proper authorities;

6. Conducting or failing to conduct an investigation of any assault, battery, harmful or offensive contact, or threat;

7. Providing or failing to provide first aid or medical treatment, or otherwise handling or responding after there has been an assault, battery, harmful or offensive contact, or threat;

8. Any assault, battery, harmful or offensive contact, or threat whether caused by, or at the instigation, instruction, direction or due to the negligence of the insured, the insured's employees, agents, patrons, customers or any other person arising from any causes whatsoever; or

9. The negligent hiring, employment, training, supervision, or retention of any employee or agent of any insured with respect to items 1. through 8. above.

This exclusion applies regardless of fault or intent and regardless of the particular cause of action.

This exclusion applies to any claim or "suit" regardless of whether assault, battery, harmful or offensive contact, or threat is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged "bodily injury", "property damage" or "personal and advertising injury" arises out of a chain of events that includes any assault, battery, harmful or offensive conduct.

* * *

(ECF 17-1, at page 45.) (FAC, ¶¶ 15-23 (ECF 17), SVS's Amended Answer, ¶¶ 2, 6, 7 (ECF 39).)

The Primary Policy includes additional exclusions pursuant to endorsement form CAS3043-0621, which, in part, includes an exclusion related to Kinsale's defense obligations as follows:

### ADDITIONAL POLICY EXCLUSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE
LIQUOR LIABILITY COVERAGE

The following exclusions are added to this Policy:

### DUTY TO DEFEND EXCLUSION

Where there is no coverage under this Policy, there is no duty to defend.

* * *

(ECF 17-1, at pages 52-53.) (FAC, ¶¶ 15-23 (ECF 17), SVS's Amended Answer, ¶¶ 2, 6, 7 (ECF 39)).)

The Excess Policy contains Commercial Excess Liability Policy Form CAX0001-0817, which states in pertinent part as follows:

**SECTION I- COVERAGE**

**A. INSURING AGREEMENT**

> We will pay on behalf of the Named Insured those sums in excess of the "underlying insurance" that you become legally obligated to pay as damages because of injury or property damage to which this insurance applies, provided that the damages would be covered by the "underlying insurance(s)", but for the exhaustion of the applicable Limits of Insurance.

> This policy shall follow the terms, definitions, conditions and exclusions of the "primary insurance" and of any other "underlying insurance" only to the extent coverage is further limited or restricted by the terms and conditions of such other "underlying insurance"; subject always to the policy period, policy limits, premiums and all other terms, definitions, conditions and exclusions of this policy. If any provisions of the "underlying insurance" conflict with any provisions of this policy, the provisions of this policy will apply.

> This policy will not, in any event, provide broader coverage than that provided by the "underlying insurance".

* * *

**SECTION III- EXCLUSIONS**

> All exclusions in the "underlying insurance", will also apply to the Limits of Insurance and coverages available under this policy. If there are conflicts in the exclusions of the "underlying insurance" with any of the exclusions of this policy, the exclusions in this policy will apply.

* * *

**6. Duty To Defend**

> Where there is no coverage under this policy, there is no duty to defend.

(ECF 17-2, at pages 6, 8.)

The Excess Policy contains endorsement form CAX3024-1016, titled Exclusion – Assault and Battery, which modifies the insurance provided under the Commercial Excess Liability Coverage as follows:

## EXCLUSION - ASSAULT AND BATTERY

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY COVERAGE**

The following exclusion is added to this policy:

This insurance does not apply to any claim or suit for injury or damage arising out of, related to or in any way involving any actual or alleged assault, battery, harmful or offensive contact, or threat, whether provoked or unprovoked.

This exclusion includes but is not limited to:

1. The prevention or suppression, or the failure to suppress or prevent any assault, battery, harmful or offensive contact, or threat;

2. The failure to provide an environment safe from any assault, battery, harmful or offensive contact, or threat, or the failure to warn of the dangers of the environment that could contribute to any assault, battery, harmful or offensive contact, or threat;

3. The selling, servicing or furnishing of alcoholic beverages resulting in any assault, battery, harmful or offensive contact, or threat;

4. Injury or damage committed while using reasonable force to protect persons or property or acting in self-defense;

5. The reporting or failing to report to the proper authorities;

6. Conducting or failing to conduct an investigation of any assault, battery, harmful or offensive contact, or threat;

7. Providing or failing to provide first aid or medical treatment, or otherwise handling or responding after there has been an assault, battery, harmful or offensive contact, or threat;

8. Any assault, battery, harmful or offensive contact, or threat, whether caused by, or at the instigation, instruction, direction or due to the negligence of the insured, the insured's employees, agents, patrons, customers or any other person arising from any causes whatsoever; or

9. The negligent hiring, employment, training, supervision, or retention of any employee or agent of any insured with respect to items 1. through 8. above.

This exclusion applies regardless of fault or intent and regardless of the particular cause of action.

This exclusion applies to any claim or suit regardless of whether assault, battery, harmful or offensive contact, or threat is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged injury or damage

arises out of a chain of events that includes any assault, battery, harmful or offensive conduct.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

(ECF 17-2, at page 24.) (FAC, ¶¶ 15-23 (ECF 17), SVS's Amended Answer, ¶¶ 2, 6, 7 (ECF 39).)

### B.    The Underlying Webb Action.

On or about October 25, 2023, Henry Willis Webb, Jr. and Meisha Larita Webb (individually and as Special Administrator of the Estate of Breeana Larita Webb) filed the underlying lawsuit styled *Henry Willis Webb, Jr., et al. v. SVS Security LLC, et al.,* Clark County, Nevada District Court Case No. A-23-880332-C (the "Webb Action"), seeking to recover damages from, among others, SVS following Breeana Webb's death. The Complaint in the Webb Action alleges, among other things, that on August 6, 2023, decedent Breeana Webb attended a "large, loud, rambunctious" party involving "heavy drug and alcohol consumption" at an apartment complex located at 7017 S. Buffalo Drive, Las Vegas, Nevada (the "Apartment Complex"). The Complaint in the Webb Action further alleges that "an altercation erupted between invitees at the Pool Party, resulting in a shootout" and "while Breeana was fleeing the scene, she was caught in the crossfire and shot multiple times, including in the face." (ECF 17-3 at page 6, ECF 17-4 at page 6.) Breeana Webb passed away due to her injuries. (Complaint and First Amended Complaint in Webb Action, attached to Kinsale's FAC as Exhibits C and D (ECF 17-3 and 17-4); RJN, ¶¶ 6, 7.) (FAC, ¶¶ 24-26 (ECF 17); SVS's Amended Answer, ¶ 2 (ECF 39); Henry Willis Webb, Jr. and Meisha Larita Webb's Answer in the instant action (the "Webbs' Answer"), ¶ 11 (ECF 41)).

The Complaint and First Amended Complaint in the Webb Action make the following allegations as to SVS, among other things:

    a.    SVS was "jointly responsible for monitoring and providing security for the Apartment Complex premises, including, without limitation, the pool area."

b.  SVS was aware that the party was scheduled for August 6, 2023, and that the pool area was a "more likely setting . . . for young, boisterous invitees to gather for parties involving drinking, drug use, disorderly conduct, physical altercations, and verbal altercations."

c.  SVS "patrolled the pool area before, during and after the Pool Party on August 6, 2023 and were aware of the Pool Party."

d.  SVS personnel "failed to provide adequate security, failed to take action to control the crowd, and failed to take action to stop the Pool Party."

e.  SVS "failed to conceive, promulgate, implement or enforce appropriate security policies and procedures to ensure the safety of invitees," which resulted in the attack on and death of Breeana Webb.

The First Amended Complaint in the Webb Action asserts causes of action for (1) Negligence; (2) Wrongful Death; and (3) Negligent Hiring, Retention and Supervision against SVS. (ECF 17-3 at pages 7-8, ECF 17-4 at pages 7-9.) (FAC, ¶¶ 27-28 (ECF 17); SVS's Amended Answer, ¶ 2 (ECF 39); Webbs' Answer, ¶ 11 (ECF 41); Complaint and First Amended Complaint in Webb Action, RJN ¶¶ 6, 7 (ECF 17-3, 17-4).)

## C.  Kinsale Defends SVS Against the Webb Action Under a Complete Reservation of Rights.

SVS tendered its defense to Kinsale.  Within thirty days of that tender of defense, Kinsale agreed to undertake the defense of SVS pursuant to the terms and conditions of the Policies and subject to a full reservation of rights thereunder, including the right to seek reimbursement of any amount paid by Kinsale to defend SVS in the event that Kinsale proves that there never was a duty to defend SVS with regard to the Webb Action, to settle the Webb Action and seek reimbursement of those amounts of the settlement not covered under the Policies, to seek declaratory relief to determine Kinsale's rights and obligations under the Policies, and to withdraw from the defense once it is determined that the Policies do not provide coverage for the Webb Action for SVS. (FAC, ¶¶ 2, 29 (ECF 17); SVS's Amended Answer, ¶¶ 2, 8 (ECF 39).)

1    **III.    ARGUMENT.**

2    **A.    A Motion for Judgment on the Pleadings Should be Granted Where**

3    **Premised on Undisputed Facts.**

4    "After the pleadings are closed - but early enough not to delay trial - a party may

5    move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Analysis under Rule 12(c)

6    is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a

7    court must determine whether the facts alleged in the complaint, taken as true, entitle

8    the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir.

9    2012). "Judgment on the pleadings is properly granted when there is no issue of material

10   fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming*

11   *v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009); *Hickman v. Mead*, 2019 WL 4139434, *3

12   (D. Nev. Aug. 30, 2019). "[W]hen ruling on a Rule 12(c) motion, courts 'may generally

13   consider only allegations contained in the pleadings, exhibits attached to the complaint,

14   and matters properly subject to judicial notice.'" *Anniversary Mining Claims, LLC v. Five*

15   *Star Trust dtd 5/27/2015*, 2021 WL 3742017, *3 (D. Nev. Aug. 24, 2021) (*citing Swartz*

16   *v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)).

17   **B.    Interpretation of an Insurance Policy and the Duty to Defend.**

18   "The interpretation of an insurance contract is a question of law for the court." *Alps*

19   *Prop. Cas. Ins. Co. v. Gewerter*, 2018 WL 6003855, *3 (D. Nev. Nov. 15, 2018) (*citing*

20   *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (2011)). "Policy terms should be

21   viewed in their plain, ordinary and popular connotations." *Fourth St. Place v. Travelers*

22   *Indem. Co.*, 270 P.3d 1235, 1239 (2011) (*quoting Am. Excess Ins. Co. v. MGM*, 729 P.2d

23   1352, 1354 (1986)). If a provision in an insurance contract is unambiguous, a court will

24   interpret and enforce it according to the plain and ordinary meaning of its terms. A policy

25   provision is only construed against the insurer if it is ambiguous. *Powell v. Liberty Mut.*

26   *Fire Ins. Co.*, 252 P.3d at 672. A court "will not rewrite contract provisions that are

27   otherwise unambiguous." *Farmers Ins. Group v. Stonik*, 867 P.2d 389, 391 (1994).

28

With respect to the duty to defend, "an insurer's duty to defend is triggered whenever the potential for indemnification arises, and it continues until this potential for indemnification ceases." *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 621 (2011). There is a potential for indemnification when the allegations in the third party's complaint show that there is "arguable or possible coverage," *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (2004), or when the insurer "ascertains facts which give rise to the potential of liability under the policy," *Century Sur. Co. v. Andrew*, 432 P.3d 180, 183 (2018). "However, 'the duty to defend is not absolute.'" *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d at 1158 (*quoting Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 350 (9th Cir. 1988)). Determining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint with the terms of the policy. If neither the allegations of the complaint nor the facts known to the insurer show any possibility of coverage, then there is no duty to defend. In such a case, the insurance policy simply does not apply. *Nautilus Insurance Company v. Access Medical, LLC,* 482 P.3d 683, 688 (2021).

## C. The Assault and Battery Exclusion Bars Coverage for the Underling Webb Action.

In *Hernandez v. First Financial Insurance Company,* 802 P.2d 1278 (1990) (per curiam), the Nevada Supreme Court was presented with an endorsed assault and battery exclusion to a liability policy which provided as follows:

> It is agreed and understood that this insurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.

In the underlying lawsuit, the plaintiff (Hernandez) alleged that the insured bar's employee/bouncer severely beat and kicked him, causing injuries. Based on the incident, plaintiff alleged causes of action for assault and battery and negligent hiring, training and supervision because the bouncer was allegedly known to be dangerous. The Nevada Supreme Court held that the assault and battery exclusion was unambiguous and

enforceable, both as to direct claims (*e.g.* the beating itself) and indirect claims (*e.g.* the negligent hiring / training / failure to prevent claim), which arguably happened *before any physical injury occurred*:

> [W]e conclude that this particular policy exclusion unambiguously includes both damages arising from the assault and battery itself and negligent hiring, training or supervision … negligent hiring constitutes a failure to prevent an assault and battery. Failure to prevent an assault and battery is covered by the broad language in this particular exclusion, which refers to "*any* ... omission *in connection with* the prevention" of assault and battery.

*Hernandez,* 802 P.2d at 1280 (emphasis in original).

Indeed, similar assault and battery exclusions have consistently been upheld and applied by Nevada courts and courts in this district. In *Burlington Ins. Co. v. Salmoran,* 181 F.Supp.3d 810 (D. Nev. Sept. 28, 2015), *aff'd, Burlington Insurance Company v. De La Puente,* 719 Fed.Appx. 615 (9th Cir. 2018), this district court held that an assault and battery exclusion which excluded coverage for liability  "arising in whole or in part out of any 'assault' or 'battery' committed or attempted by any person" or any act or omission connected to preventing an assault or battery was unambiguous, and applied to exclude coverage for an underlying suit where plaintiffs (patrons of the insured nightclub) claimed injuries arising from a fight that started inside the nightclub and spilled out into a parking lot after the plaintiffs were thrown out of the nightclub by bouncers. "The courts in this district, following the Nevada Supreme Court's guidance in *Hernandez*, have applied assault and battery exclusions to negligence and other claims if the resulting injuries were connected to an assault or battery." *Burlington Ins. Co. v. Salmoran,* 181 F.Supp.3d at 815. The Ninth Circuit affirmed, noting that the "assault and battery exclusion applies not only to injuries directly caused by an assault or battery, but also to injuries <u>arising out of</u> an assault and battery." *Burlington Insurance Company v. De La Puente,* 719 Fed.Appx. at 617 (emphasis in original). The Ninth Circuit noted:

> [B]ecause the policy here excludes from coverage bodily injury "[a]rising in whole or in part out of any act or omission in connection with <u>avoiding, preventing, suppressing or halting</u> any actual or threatened 'assault' or 'battery'" … , the district court correctly determined that … Appellants'

negligence claim against [the insured nightclub] falls squarely within the scope of the assault and battery exclusion.

*Burlington Insurance Company v. De La Puente,* 719 Fed.Appx. at 617.

Courts in this district have repeatedly upheld similar assault and battery exclusions. For example, in *First Financial Ins. Co. v. Scotch 80's Ltd., Inc.,* 2009 WL 1886167 (D. Nev. June 29, 2009), this district court found that the insurer had no duty to defend the insured bar in connection with a bar patron's claims against the bar related to a series of assaults and batteries that lead to the bar patron being shot, where the policy at issue contained an exclusion barring coverage for bodily injuries "arising out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery." The court noted:

> First Financial is not required to provide insurance coverage for bodily injuries "arising out of assault and battery" … Put in other words, but for these assaults and batteries, [underlying plaintiff] would not have been injured. [*Citing Capitol Indemnity Corp. v. Blazer,* 51 F.Supp.2d 1080, 1087 (D.Nev.1999)] In determining whether a claim arises out of an assault or battery, the "crucial inquiry is ... whether the cause of action would not exist 'but for' [the] assault [or battery]". For this reason, there is no potential for coverage under the policy and First Financial is not obligated to defend its insureds.

*First Financial Ins. Co. v. Scotch 80's Ltd., Inc.,* 2009 WL 1886167, at *3. *See also Robinson v. First Financial Insurance Company,* 2009 WL 10693921 (D. Nev. Oct. 6, 2009) (Policy's assault and battery exclusion which provided that "this insurance does not apply to ... 'bodily injury' ... arising out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery" applied to exclude coverage for an underlying lawsuit by a bar patron who was attacked and repeatedly stabbed in the eye with a high heel shoe.); *Town Square Las Vegas, LLC v. Hudson Specialty Ins. Co.,* 2022 WL 943366 (D. Nev. March 28, 2022) (Policy's assault and battery exclusion unambiguously applied to exclude coverage for bar patron's lawsuit against insured bar alleging that security personnel at the bar battered him, negligent hiring and failure to prevent battery.).

Citing *Hernandez* and *Burlington*, this district court upheld a similar assault and battery exclusion in *United Specialty Insurance Company v. Hachiman, LLC*, 2018 WL 2245057 (D. Nev. Feb. 15, 2018). In *Hachiman*, United Specialty Insurance Company issued a liability policy to, among others, the Palomino Club which contained an endorsed exclusion which stated that coverage does not apply to liability "directly or indirectly, actually or allegedly, arising out of or related to any" assault or battery. In one of two underlying lawsuits filed in state court, plaintiffs claimed that while at the Palomino Club, another patron shot them. Plaintiffs brought claims for assault and battery, intentional infliction of emotional distress, and negligent infliction of emotion distress against the patron, and two negligence claims against the Palomino Club for allowing the other patron to bring a firearm into the club. This district court held that the language of the assault and battery exclusion was unambiguous and applied to exclude coverage for the underlying lawsuits. "On the face of the complaint, [plaintiffs] allege an assault and battery, and all the claims arise out of these allegations." *Hachiman*, at *3. Notably, after discovery was conducted in the underlying lawsuit, the insured in *Hachiman* moved the court for reconsideration, citing deposition testimony which arguably suggested that the altercation began as an "accident," where a gunman waived a pistol and accidentally discharged his weapon. As a result, others began shooting and the plaintiff was shot. *United Specialty Ins. Co. v. Hachiman, LLC*, 2020 WL 109807, at *1 (D. Nev. Jan. 9, 2020) ("*Hachiman II*"). The court denied the insured's motion, holding that those facts did not negate the exclusion. "Under Nevada law, assault includes (1) '[u]nlawfully attempting to use physical force against another person' or (2) '[i]ntentionally placing another person in reasonable apprehension of immediate bodily harm.' Nev. Rev. Stat. § 200.471. Battery includes 'any willful and unlawful use of force or violence upon the person of another." Id. § 200.481.'" *Hachiman II*, at *3. The Court noted:

> The policy requires that the claim "directly or indirectly, actually or allegedly, aris[e] out of or relate[ ] to any" assault or battery. ECF No. 39-1 at 20. The deposition testimony shows that the underlying litigation is related to an assault or battery.

*Hachiman II*, at *3.

Here, it is worth emphasizing the broad language of the A&B Exclusion in the Kinsale Policies:

> This insurance does not apply to any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising out of, related to, or, in any way involving any actual or alleged assault, battery, harmful or offensive contact, or threat, whether provoked or unprovoked.
>
> This exclusion includes but is not limited to:
>
> 1. The prevention or suppression, or the failure to suppress or prevent any assault, battery, harmful or offensive contact, or threat;
>
> 2. The failure to provide an environment safe from any assault, battery, harmful or offensive contact, or threat, or the failure to warn of the dangers of the environment that could contribute to any assault, battery, harmful or offensive contact, or threat;
>
> 3. The selling, servicing or furnishing of alcoholic beverages resulting in any assault, battery, harmful or offensive contact, or threat;
>
> 4. Injury or damage committed while using reasonable force to protect persons or property or acting in self-defense;
>
> 5. The reporting or failing to report to the proper authorities;
>
> 6. Conducting or failing to conduct an investigation of any assault, battery, harmful or offensive contact, or threat;
>
> 7. Providing or failing to provide first aid or medical treatment, or otherwise handling or responding after there has been an assault, battery, harmful or offensive contact, or threat;
>
> 8. Any assault, battery, harmful or offensive contact, or threat whether caused by, or at the instigation, instruction, direction or due to the negligence of the insured, the insured's employees, agents, patrons, customers or any other person arising from any causes whatsoever; or
>
> 9. The negligent hiring, employment, training, supervision, or retention of any employee or agent of any insured with respect to items 1. through 8. above.
>
> This exclusion applies regardless of fault or intent and regardless of the particular cause of action.
>
> This exclusion applies to any claim or "suit" regardless of whether assault, battery, harmful or offensive contact, or threat is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged "bodily injury", "property damage" or "personal and advertising injury" arises out

of a chain of events that includes any assault, battery, harmful or offensive conduct.

No one disputes the terms of the Policies or the allegations in the underlying Webb Action. The Webb plaintiffs' claims cannot be characterized as based on anything other than the events leading up to the shooting and the shooting itself, *i.e.,* assault [(1) '[u]nlawfully attempting to use physical force against another person' or (2) '[i]ntentionally placing another person in reasonable apprehension of immediate bodily harm.' Nev. Rev. Stat. § 200.471] and battery ["any willful and unlawful use of force or violence upon the person of another." NRS 200.481].

Because the Webb Action undoubtedly arises out of assault and battery, the clear and unambiguous language in the A&B Exclusion applies to exclude coverage, both for defense and indemnity.  Moreover, under both the unambiguous language in the Policies and Nevada law, the A&B Exclusion applies to exclude derivative claims such as failing to prevent assault or battery, failure to provide a safe environment, assault or battery by persons other than "insureds," or negligent hiring and training. Kinsale is therefore entitled to judgment as a matter of law.

**D.    Because Kinsale Never Had a Duty To Defend, it is Entitled to Reimbursement of Costs and Fees.**

"An insurance policy is a contract, and we do not 'force upon parties contractual obligations, terms or conditions which they have not voluntarily assumed.'" *Nautilus Insurance Company v. Access Medical, LLC,* 482 P.3d at 691 (*citing McCall v. Carlson*, 172 P.2d 171, 187 (1946)). When a court determines that an insurer never owed a duty to defend, the insurer expressly reserved its right to seek reimbursement in writing after defense was tendered, and the policyholder accepted the defense from the insurer, then the insurer is entitled to that reimbursement. *Nautilus Insurance Company v. Access Medical, LLC,* 482 P.3d at 691. *See also Beazley Underwriting LTD v. Jumper Man Party Rentals, LLC,* 2024 WL 1995345 (D. Nev. May 3, 2024).

Upon tender of the underlying lawsuit, Kinsale agreed to defend SVS subject to a full and complete reservation of rights under the Policies in writing, including the right to

seek reimbursement of any amount paid by Kinsale to defend SVS in the event that Kinsale establishes that there never was a duty to defend SVS with regard to the Webb Action. SVS does not dispute this. (FAC, ¶¶ 2, 29 (ECF 17); SVS's Amended Answer, ¶¶ 2, 8 (ECF 39)).) Should the court determine that Kinsale never had a duty to defend SVS, the court should issue a judicial declaration that Kinsale is entitled to reimbursement of the fees and costs it expended in defending SVS in connection with the Webb Action.

## IV.    CONCLUSION.

The Nevada Supreme Court established over 30 years ago that assault and battery exclusions are unambiguous and enforceable. Because the Webb Action unquestionably arises out of assault and battery, the A&B Exclusion squarely applies. Kinsale is entitled to judgment as a matter of law.

Dated:  January 24, 2025

NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP

By: _____
       Matthew J. Hafey (*Pro Hac Vice*)
       Timothy P. Kitt
       Khrys Wu (*Pro Hac Vice*)
Attorneys for Plaintiff KINSALE
INSURANCE COMPANY